UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
BARBARA DANIEL,                          )
                                         )
                        Plaintiff,       )   No. C09-0890RSL
        v.                               )
                                         )   ORDER GRANTING IN PART
THE BOEING COMPANY, *et al.*,            )   DEFENDANTS' MOTION FOR
                                         )   SUMMARY JUDGMENT
                        Defendants.      )
_____)

This matter comes before the Court on "Defendants' Motion for Summary Judgment." Dkt. # 13. Plaintiff has asserted claims under the Americans with Disabilities Act and the Washington Law Against Discrimination. Opposition (Dkt. # 21) at 2.[1] Defendants seek dismissal of all of plaintiff's remaining claims.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of the

---

[1] Plaintiff agrees that her race and gender discrimination claims under Title VII of the Civil Rights Act of 1964, her age discrimination claim under the Age Discrimination in Employment Act of 1967, her race discrimination claim under 42 U.S.C. § 1981, and her common law claims of negligence, negligent infliction of emotional distress, negligent hiring, outrage, and assault and battery should be dismissed.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1. materials in the record that show the absence of a genuine dispute as to any material fact (Fed. R.
2. Civ. P. 56(a)-(c)).  Once the moving party has satisfied its burden, it is entitled to summary
3. judgment if the non-moving party fails to designate "specific facts showing that there is a
4. genuine issue for trial." Celotex Corp., 477 U.S. at 324.  "The mere existence of a scintilla of
5. evidence in support of the non-moving party's position is not sufficient," and factual disputes
6. whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a
7. motion for summary judgment.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919
8. (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In other words,
9. "summary judgment should be granted where the nonmoving party fails to offer evidence from
10. which a reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D
11. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).
12.       Having reviewed the memoranda, declarations, and exhibits submitted by the
13. parties and taking the facts in the light most favorable to plaintiff, the Court finds as follows:

## BACKGROUND

15.       Plaintiff is a 59-year-old African-American woman who has been diagnosed with
16. fibromyalgia.  Opposition (Dkt. # 21) at 2-3.  Plaintiff has worked for Boeing intermittently
17. since 1978, beginning her most recent term of employment in 2005.  Finch Decl. (Dkt. # 16) at
18. ¶ 4.  Plaintiff's job title is Materials Processor/Requirements Facilitator ("MPRF"). Id.  This
19. position involves retrieving parts for airplane mechanics from different locations in the facility
20. (Knighton Decl. (Dkt. # 19) at ¶ 6) and requires an employee to be able to walk "frequently,"
21. which Boeing defines as three to six hours per shift (Mares Decl. (Dkt. # 22), Ex. E at 00057).

**A.  Placement on Light Duty**

23.       Plaintiff holds a Washington State disabled parking placard.  She presented the
24. placard to Boeing and requested permission to park in a lot near the entrance to the facility,
25. rather than in the general employee parking lot which was approximately one mile from the
26. entrance.  Jeffery Decl. (Dkt. # 17) at ¶ 4.  Boeing issued plaintiff a Tier 1 parking pass on

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT             -2-

January 17, 2007.  Jeffery Decl. (Dkt. # 17) at ¶ 6; Mares Decl. (Dkt. # 22), Ex. F.  In accordance with then-company policy (Jeffery Decl. (Dkt. # 17), Ex. 1 at 2), Boeing placed a medical restriction on plaintiff's work status when she received the Tier 1 parking pass (Mares Decl. (Dkt. # 22), Ex. D at 13-14).  The medical restriction stated that plaintiff "may occasionally walk" and effectively restricted plaintiff to jobs which involve walking for one to three hours in an eight-hour shift.  Mares Decl. (Dkt. # 22), Ex. D at 13.  The imposition of a medical restriction upon issuance of a Tier 1 parking pass was automatic, but the restriction could be rebutted if the employee obtained a statement from her healthcare provider that the employee did not, in fact, need an accommodation to perform her job.  Jeffery Decl. (Dkt. # 17) at ¶ 8 .

Although Boeing imposed the "may occasionally walk" medical restriction on plaintiff in early 2007, it was not immediately enforced.  In late 2007, Wesley Costa, plaintiff's supervisor, noticed that the MPRF job description required "frequent" walking, but that plaintiff was restricted to "occasional" walking.  Costa Decl. (Dkt. # 15) at ¶ 5.  Based solely on this conflict (and not on any difficulty plaintiff was having at work or any request for accommodation from plaintiff), Boeing informed plaintiff that she could not perform the duties of an MPRF.  Mares Decl. (Dkt. # 22), Ex. A at 41-42.  Boeing held several meetings with plaintiff to explain how the medical restriction has arisen, the steps she would need to take to have it removed, and the impact of the restriction on her current employment.  In particular, Boeing told plaintiff that she should follow up with Boeing Medical and her healthcare provider if she disagreed with the medical restriction (Wilson Decl. (Dkt. # 20) at ¶ 8) and that Boeing would be unable to accommodate her medical restriction in the MPRF position (Costa Decl. (Dkt. # 15) at ¶ 7).  Plaintiff alleges that there were three Caucasian MPRFs who held Tier 1 parking passes and were not placed on light duty.  Mares Decl. (Dkt. # 22), Ex. A at 65-68.

Plaintiff's physician, Dr. Warren Miller, sent Boeing a series of letters concerning plaintiff's work restriction.  In a letter dated February 6, 2008, Dr. Miller wrote that "Ms.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT           -3-

Daniels [sic] is physically able to walk 200 yards within an 8 hour time period. She has been able to function well in her present job without any medical restrictions." Jeffery Decl. (Dkt. # 17), Ex. 2. A second letter, also dated February 6, 2008, but received by Boeing Medical on February 19, 2008, states that "Ms. Daniels [sic] is physically able to walk no more than 200 yards without stopping briefly to rest. She has been able to function well in her present job without any medical restrictions." Jeffery Decl. (Dkt. # 17), Ex. 3.

Despite Dr. Miller's statement that plaintiff could perform her job without any medical restrictions, Boeing retained the "may occasionally walk" restriction and placed plaintiff on light duty beginning June 24, 2008. Wilson Decl. (Dkt. # 20) at ¶ 11. Plaintiff could stay on light duty only 180 days: she would be terminated if she remained on light duty any longer than that. Mares Decl. (Dkt. # 22), Ex. A at 74. In a third letter dated July 8, 2008, Dr. Miller attempted to clarify plaintiff's needs, writing that she "is physically able to walk no more than 200 yards without stopping briefly to rest. I recommend continuing her parking accommodation indefinitely. Her regular job does not pose a physical threat or risk to her." Jeffery Decl. (Dkt. # 17), Ex. 4. Boeing made no change to plaintiff's work restrictions.

Plaintiff's light duty assignments were not to her liking. Her first light duty assignment involved working alone in an area that exposed her to cats and rats that came in through open doors. Mares Decl. (Dkt. # 22), Ex. A at 83. Plaintiff is afraid of cats. Mares Decl. (Dkt. # 22), Ex. A at 83. Another light duty assignment required her to work in a noisy area where she was exposed to toxic chemicals. Mares Decl. (Dkt. # 22), Ex. A at 179. Despite the change in work areas, the details of plaintiff's employment remained unchanged: she worked the same shift, she kept her same work title (Costa Decl. (Dkt. # 15) at ¶ 9), and her salary increased in accordance with her union contract (Finch Decl. (Dkt. # 16) at ¶ 6). The only significant difference in the terms of her employment was that the light duty position was temporary.

On July 18, 2008, plaintiff filed a complaint with the Washington State Human

Rights Commission and the Equal Employment Opportunity Commission ("EEOC"). Mares Decl. (Dkt. # 22), Ex. K. Plaintiff asserted disability discrimination in the complaint, alleging that Boeing placed her on light duty despite the fact that she was adequately performing her essential job functions and that her doctor had stated that she needed only a parking pass, not a work restriction. Id.

On September 10, 2008, Boeing notified Dr. Miller that changes had been made to his medical recommendations due to plaintiff's request for a Tier 1 parking pass. The proposed restrictions included a parking pass and "MAY OCCASIONALLY WALK (NO MORE THAN 200 YARDS WITHOUT STOPPING BRIEFLY TO REST.)." Jeffery Decl. (Dkt. # 17), Ex. 5. The form explained that medical restrictions might impact job assignment, that "occasional" meant one to three hours, and that it was important to follow restrictions on and off the job. The form asked Dr. Miller to agree or disagree with the changes. Boeing received the signed form from Dr. Miller the next day, indicating that he approved of the medical restrictions. Jeffery Decl. (Dkt. # 17), Ex. 5. Plaintiff was on strike when Boeing sent the fax. Mares Decl. (Dkt. # 22), Ex. A at 56.

On January 15, 2009, Dr. Miller faxed to Boeing an amended version of the form, clarifying that he did not restrict plaintiff's work to "may occasionally walk" because she is able to perform her normal job without restriction. Jeffery Decl. (Dkt. # 17), Ex. 6. Boeing Medical confirmed Dr. Miller's opinion and, on January 22, 2009, removed plaintiff's walking restriction. Jeffery Decl. (Dkt. # 17), Ex. 8. Per Dr. Miller's recommendation, plaintiff was allowed to retain her parking pass. Id. A week later, the EEOC determined that forcing plaintiff to accept a light duty position when her physician had stated that she could perform all of her normal job duties was a violation of the Americans With Disabilities Act of 1990 ("ADA"). Mares Decl. (Dkt. # 22), Ex. C. On March 2, 2009, Boeing stopped imposing walking restrictions on employees simply because they presented a Washington State disabled parking placed and obtained a Tier 1 parking pass. Mares Decl. (Dkt. # 22), Ex. M.

### B. Rotation to a Different Barge

Upon plaintiff's return from light duty, she was assigned to a different work area, or "barge." Mares Decl. (Dkt. # 22), Ex. A at 73.  Boeing asserts that it is a common practice to rotate employees to different work areas (Knighton Decl. (Dkt. # 19) at ¶ 9), and plaintiff acknowledges that she had been put "on every barge there is" (Silverstein Decl. (Dkt. # 24), Ex. 1 at 120).  Plaintiff states that the new barge to which she was assigned was busier than the barge she had worked on prior to going on light duty.  Mares Decl. (Dkt. # 22), Ex. A at 73-74. Although plaintiff suspects that Boeing placed her on the busy barge so that she would fail, the parties agree that plaintiff was able to perform the work.  Mares Decl. (Dkt. # 22), Ex. A at 74; Costa Decl. (Dkt. # 14) at ¶ 14).  The added pressure of the new barge caused plaintiff to have an anxiety attack.  Mares Decl. (Dkt. # 22), Ex. A at 83.

### C. Transfer to the Everett Facility

Approximately three months after plaintiff returned from light duty, Boeing decided to eliminate some MPRF positions at the Renton facility.  Costa Decl. (Dkt. # 14) at ¶ 15.  Boeing's Everett facility indicated an interest in accepting an MPRF as a transfer.  Id. at ¶ 16.  Based on policies identified by Boeing's Human Resources department (which take into consideration seniority status, proximity to Everett, and team and union leadership obligations), plaintiff and one other employee were eligible for transfer.  Id. at 19; Finch Decl. (Dkt. # 16) at ¶ 12.

Boeing sent the two employees' folders to the Everett facility, which then selected plaintiff.  Finch Decl. (Dkt. # 16) at ¶ 13.  There is no indication that any Renton employee or supervisor had discretion in determining who would be transferred to Everett.  Ms. Costa believes Everett chose plaintiff because plaintiff was familiar with a particular inventory system and the other candidate was not.  Costa Decl. (Dkt. # 16) at ¶ 21.  Plaintiff was assigned to the Everett facility as of April 27, 2009.  Finch Decl. (Dkt. # 16) at ¶ 14.

## DISCUSSION

**A.  Discrimination under the Americans with Disabilities Act**

Plaintiff claims that defendants violated the Americans with Disabilities Act ("ADA") when they placed her on light duty. Opposition (Dkt. # 21) at 18.[2] The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Boeing is a "covered entity" for purposes of this section of the ADA because it employs more than fifteen people. 42 U.S.C. § 12111(2), § 12111(5)(A). The ADA identifies a number of actions that constitute discrimination, including "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee. . . ." 42 U.S.C. § 12112(b)(1). Plaintiff may establish a violation of the ADA by providing direct evidence of discrimination or by making a *prima facie* showing of discriminatory intent.[3]

---

[2] Defendants assert that plaintiff failed to adequately plead a claim under the ADA because she cited Title II of the Act in her complaint, which applies only to public entities. Motion (Dkt. # 13) at 20-21. Although the complaint does not refer to Title I of the ADA, the complaint meets Washington's liberal rules of pleading because it contains "direct allegations sufficient to give notice to the court and the opponent of the nature of the plaintiff's claim." Berge v. Gorton, 88 Wn.2d 756, 762 (1977). Plaintiff alleged that Boeing discriminated against plaintiff in violation of the ADA, relying on an EEOC finding against Boeing as an employer. Notice of Removal (Dkt. # 1), Ex. 1. Defendants had sufficient notice regarding the nature of plaintiff's ADA claim to prepare for and defend against this claim.

[3] Courts have recognized that direct evidence of discriminatory intent can satisfy plaintiff's burden at the summary judgment stage. See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004) (noting alternative means by which discriminatory intent can be shown). In order to give rise to an inference of discrimination under the alternative test, "plaintiff must provide direct evidence that the defendant acted with a discriminatory motive and that the discriminatory motivation was a 'significant or substantial factor in an employment decision . . . .'" Kastanis v. Educ. Employees Credit

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -7-

1  Plaintiff claims that Boeing discriminated against her by classifying her in such a
2 way that she was forced onto light duty and subjected to "deplorable working conditions" with
3 the possibility of termination. Opposition (Dkt. # 21) at 19.  The Court finds that plaintiff has
4 presented direct evidence that she was treated differently because of her disability, precluding
5 summary judgment on her ADA claim.  Boeing has all but acknowledged that it imposed a
6 medical restriction on plaintiff when it discovered that she was disabled, effectively limiting the
7 types of jobs and opportunities available to plaintiff.  A reasonable fact finder could conclude
8 that this conduct violated § 12112(b)(1) of the ADA.

9  If plaintiff opts to present a *prima facie* case of disability discrimination, she must
10 show that (1) she is a disabled person within the meaning of the ADA, (2) she is qualified, with
11 or without reasonable accommodation, to perform the essential functions of the job that she
12 holds or seeks, and (3) she has suffered an adverse employment decision because of her
13 disability.  See Sanders v. Arneson Prods., Inc., 91 F.3d 1351, 1353 (9th Cir. 1996).  Boeing
14 does not dispute that plaintiff has a physical impairment that substantially limits certain major
15 life activities and that she is disabled for purposes of the ADA.  Based on her extensive work
16 history as an MPRF, a reasonable fact finder could conclude that she is qualified to perform the
17 essential functions of her job without accommodation.  Plaintiff has also designated specific
18 facts from which one could conclude that her placement on light duty constituted an adverse
19 employment decision.  Although Boeing did not permanently assign plaintiff to light duty or
20 reduce her pay, "[a] job transfer may constitute an adverse job action even where the pay and
21 benefits are identical if there is a reduction in other terms, conditions, or privileges of
22 employment."  McGrenaghan v. St. Denis School, 979 F. Supp. 323, 326 (E.D. Pa. 1997).
23 Viewing the facts in the light most favorable to plaintiff, one could conclude that both the terms

---

Union, 122 Wn.2d 483, 491 (1993) (quoting Buckley v. Hosp. Corp. of Am., Inc., 758 F.2d 1525, 1530 (11th Cir. 1985)).

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -8-

1  and conditions of plaintiff's employment were adversely affected when she was assigned to light
2  duty: the literal term of her employment at Boeing changed from permanent to temporary, and
3  the conditions in which she worked were at least arguably worse.

4      Plaintiff has therefore established a *prima facie* case and is entitled to a
5  presumption that Boeing's conduct, if left unexplained, was more likely than not prompted by
6  her disability. See Furnco Constr. Corp. v. Waters, 438 U.S. 567, 575 (1978). The burden
7  therefore shifts to defendants to "produce evidence that the employment action was based on
8  legitimate, nondiscriminatory reasons." Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 150 (2004).
9  Boeing argues that it reassigned plaintiff to light duty in a non-discriminatory attempt to
10 accommodate her disability. There is, however, no evidence in the record to support Boeing's
11 underlying assumptions that plaintiff's disability impacted her job in any way or that she needed
12 an accommodation other than a Tier 1 parking pass. At the time the medical restriction was
13 imposed on plaintiff, all Boeing knew was that she held a Washington State disability placard
14 and had obtained preferential parking privileges. At the time plaintiff was placed on light duty,
15 she was adequately performing her duties as an MPRF, she had not requested any changes or
16 accommodations in those duties, and her doctor had twice stated that she was able to perform her
17 job without any medical restrictions. In effect, Boeing learned that its employee had an
18 unspecified disability and simply assumed that she could not perform certain tasks or hold
19 certain positions. This is exactly the kind of discriminatory assumption that the ADA was
20 designed to prevent. The fact that plaintiff has a disability, standing alone and without any
21 indication that the disability affected her job performance, cannot justify disparate treatment in
22 the workplace.[4]

---

[4] At various points, Boeing implies that the imposition of the "may occasionally walk" restriction and the resulting light duty assignment were caused by Dr. Miller's statements that plaintiff could not walk more than 200 yards without resting. These statements, even if ambiguous, were (a) made after Boeing had imposed the medical restriction on plaintiff and (b) accompanied by clear

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -9-

Boeing's argument seems to be that it was simply enforcing its policies regarding the issuance of Tier 1 parking passes and that none of its employees intended to discriminate against plaintiff because she is disabled. Boeing is responsible for its policies, however. It chose to equate a Washington State disability placard and/or Tier 1 parking pass with a work limitation, without any individualized inquiry into the needs or abilities of its employee. By placing an unrequested and unnecessary work limitation on plaintiff, Boeing effectively compelled her supervisor to transfer plaintiff to light duty unless she affirmatively proved, through yet another medical opinion, that she could do the job she was already doing. The fact that Boeing had a policy which violated the ADA cannot shield it from a claim under the statute.[5]

Considering the evidence in the light most favorable to plaintiff, Boeing is not entitled to summary judgment on plaintiff's claim that her transfer to light duty constituted unlawful disability discrimination in violation of the ADA.

**B. Washington Law Against Discrimination**

Plaintiff asserts that defendants violated the Washington Law Against Discrimination, RCW 49.60 *et seq.* ("WLAD") by discriminating against her based on her disability, race, and age. Opposition (Dkt. # 21) at 2. The WLAD makes it unlawful "[t]o discriminate against any person in compensation or in other terms or conditions of employment" because of these factors. RCW 49.60.180(3). Plaintiff argues that defendants subjected her to disparate treatment and a hostile work environment

---

statements that plaintiff could do her job without any medical restrictions. To the extent Boeing was confused about Dr. Miller's opinion on the key subject of work limitations, it had a duty to inquire instead of assuming plaintiff could not hold certain positions or perform certain tasks.

[5] Boeing's reliance on Dr. Miller's September 11, 2008, approval of the "may occasionally walk" restriction is misplaced. That communication occurred more than two months after Boeing had transferred plaintiff to light duty and is not causally related to that transfer.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT           -10-

**1. Disability Discrimination**

The WLAD encompasses two types of disability discrimination claims: failure to accommodate claims and disparate treatment claims. Plaintiff asserts the latter type of claim. As discussed above, a reasonable fact finder could conclude that Boeing treated plaintiff differently than her non-disabled co-workers when it transferred her to light duty simply because she was disabled and despite her ability to perform all of the functions of the MPRF position without assistance or accommodation. Plaintiff's disability discrimination claim under the WLAD may proceed.

**2. Race Discrimination**

It is unclear whether plaintiff is asserting a disparate treatment claim related to race.[6] Assuming, for purposes of this order, that such a claim is alleged, plaintiff has not identified any explicit statement or conduct from which one could conclude that her race motivated defendants' behavior in this case. Because this claim relies on circumstantial evidence and the inferences that arise therefrom, it is subject to the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Dumont v. City of Seattle, 148 Wn. App. 850, 862 (2009) (applying McDonnell Douglas analysis to WLAD claim). Plaintiff has the initial burden of establishing a *prima facie* case, which would entitle plaintiff to a presumption that the employer's conduct, if left unexplained, is more likely than not "based on a discriminatory criterion illegal under the Act." Furnco Constr., 438 U.S. at 575. See also Riehl, 152 Wn.2d at 149-50. Once the presumption arises, the burden shifts to defendants to "produce evidence that the employment action was based on legitimate, nondiscriminatory reasons." Riehl, 152 Wn.2d at 150. If the employer satisfies its burden of production, the presumption of discrimination raised by the *prima facie* showing falls away, and plaintiff may avoid summary

---

[6] In her opposition, plaintiff argues that she was subjected to a hostile work environment based on her race. Opposition (Dkt. # 21) at 25-26.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -11-

judgment only by producing enough evidence to allow a reasonable factfinder to conclude that: "(1) the employer's reasons have no basis in fact; or (2) even if the reasons are based on fact, the employer was not motivated by the reasons; or (3) the reasons are insufficient to motivate the adverse employment decision." Chen v. State, 86 Wn. App. 183, 190 (1997).[7]

A *prima facie* case of race discrimination involves a showing that (1) plaintiff is African-American, (2) she was treated less favorably in the terms or conditions of her employment (3) than a similarly situated Caucasian employee, and (4) she and the non-protected employee were doing substantially the same work. Washington v. Boeing Co., 105 Wn. App. 1, 13 (2001). Plaintiff has not shown that similarly-situated Caucasian employees were treated more favorably. At her deposition, plaintiff asserts that there were three other MPRFs who obtained Tier 1 parking passes but were not put on light duty. Mares Decl. (Dkt. # 22), Ex. A at 65. Plaintiff does not know what disability affected each of these women or how it impacted their job performance. Id. at 90, 97, and 101. One of the women, Linda Sayler, was, in fact, put on light duty. Id. at 66. Another women, Deon McEwen, could be accommodated in her original position as an MPRF. Id. Plaintiff offers no evidence regarding the limitations any of these women had as a result of their medical conditions or whether their doctors authorized continued employment as MPRFs. Plaintiff is simply guessing that these three women are similarly-situated to her based on the fact that they all held Tier 1 parking passes. At most, the facts of which plaintiff has personal knowledge suggest that Boeing imposed an "automatic" work limitation on all Tier 1 pass recipients, regardless of race, and that some employees were able to resolve the matter by going on light duty, accepting accommodation, and/or obtaining a release from their doctors while plaintiff was not. Plaintiff has not made out a *prima facie* case

---

[7] Under federal law, plaintiff can avoid judgment and overcome defendants' legitimate nondiscriminatory reason for their actions by showing either (1) that defendants' proffered reasons for the adverse employment action were false or (2) that the true reasons for the action were discriminatory in nature. Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995).

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT             -12-

of race discrimination.

#### 4. Age Discrimination

Plaintiff alleges that she is over the age of forty and, despite performing her job satisfactorily, she was transferred to the Everett plant and replaced by three people in their 20s. Mares Decl. (Dkt. # 22), Ex. A at 132-33. Although there is some doubt regarding the basis for plaintiff's testimony regarding her replacements after she was transferred to Everett, the Court will assume for purposes of this motion that plaintiff has made a *prima facie* showing of age discrimination under the WLAD. See Kirby v. City of Tacoma, 124 Wn. App. 454, 466 (2004).

Defendants have provided a legitimate, nondiscriminatory explanation for plaintiff's transfer, however. Boeing was in the midst of downsizing, and the Renton plant was required to eliminate MPRF positions from plaintiff's workgroup. At the same time, Everett was in need of an MPRF. Plaintiff's supervisor was instructed to forward two employees' folders for consideration. After consulting with human resources, Ms. Costa identified two employees who were not in danger of being laid off, lived closest to the Everett facility, and were not team leaders or union shop stewards. After reviewing the two files and learning that the other candidate did not know Everett's inventory system, Everett chose plaintiff for transfer.

The burden therefore shifts back to plaintiff to show that defendants' explanation for the transfer is "actually a pretext for what, in fact, is a discriminatory purpose." Kirby, 124 Wn. App. at 464. Plaintiff argues that, because Boeing's policy for choosing employees for transfer in a surplus situation takes into consideration whether the employee has enough seniority to avoid lay offs, the policy results in a higher rate of transfer of older employees and is therefore a pretext for age discrimination. This argument fails as a matter of law. Employment decisions motivated by factors such as seniority or salary do not constitute age discrimination. See Cooney v. Union Pac. R. Co., 258 F.3d 731, 735 (8th Cir. 2001). Although those factors often correlate with age, they are not the same thing: a thirty-five year old employee can have more seniority at a company than her fifty-five year old coworker. Using seniority as a factor

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT             -13-

when deciding who will bear the pain of downsizing is not precluded by the WLAD. Plaintiff has failed to show that Boeing's reasons for the transfer are unworthy of belief or otherwise a pretext for age discrimination.

**5. Hostile Work Environment**

Plaintiff alleges that defendants subjected her to a hostile work environment because of her disability and race. A *prima facie* case of hostile work environment can be established by showing that (1) plaintiff is a member of a protected class, (2) she suffered unwelcome harassment, and (3) the harassment was because of the protected characteristic, (4) affected the terms or conditions of plaintiff's employment, and (5) can be imputed to the employer. Robel v. Roundup Corp., 148 Wn.2d 35, 45 (2002). Plaintiff must show that the harassment was "severe or pervasive enough to create an objectively hostile or abusive work environment . . . ." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

Plaintiff has not identified any discriminatory conduct or statements in the workplace other than her reassignment to light duty. There is no evidence that coworkers taunted her about her disability (Robel, 148 Wn.2d at 40) or made racially derogatory comments (Davis v. West One Auto. Group, 140 Wn. App. 449, 453 (2007)). Plaintiff has not cited any cases in which the adverse employment action giving rise to a disparate impact claim also serves as the sole basis for a hostile work environment claim. The two claims are legally and factually distinct, and plaintiff has not shown any derogatory comments or actions that pervaded the workplace to such an extent that they altered the terms and conditions of her employment. Plaintiff has not, therefore, established a *prima facie* case of discrimination under a hostile work environment theory.

**C. Retaliation**

Plaintiff asserts that defendants violated both the ADA and the WLAD by retaliating against her for engaging in protected activity. A *prima facie* case of retaliation under either statute requires a showing that (1) plaintiff engaged in protected activity, (2) she suffered

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT         -14-

an adverse employment action, and (3) there was a causal link between the two. Pardi v. Kaiser Found. Hosp., 389 F.3d 840, 849 (9th Cir. 2004); Burchfiel v. Boeing Co., 149 Wn. App. 468, 482 (2009). Plaintiff must show that retaliation was a substantial factor motivating the adverse employment action, but not necessarily the sole motivation. Burchfiel, 149 Wn. App. at 482.[8] Temporal proximity between the protected activity and the adverse employment action is one factor in determining a causal link between the two. Francom v. Costco Wholesale Corp., 98 Wn. App. 845, 862 (2000). The McDonnell Douglas burden shifting framework applies to retaliation claims as well as discrimination claims. See Pardi, 389 F.3d at 849.

Plaintiff engaged in protected activity by (a) requesting a parking pass to accommodate her disability and (b) filing a complaint with the EEOC regarding her assignment to light duty. See e.g., Pardi, 389 F.3d at 850 (pursuing one's rights under the ADA constitutes protected activity). Plaintiff alleges that she suffered adverse employment actions when defendants placed her on light duty, assigned her to the busiest barge in the facility, and transferred her to the Everett facility.[9] The latter two events are not "adverse" for purposes of a retaliation claim. Plaintiff worked in the same position, for the same pay, with the same job responsibilities: the only change was in location. In addition, the transfers were consistent with company policies related to worker training and surplus situations, negating any inference of

---

[8] Under federal law, plaintiff must provide "evidence adequate to create an inference that an employment decision was *based on* an illegal discriminatory criterion." Coons v. Sec'y of U.S. Dep't. of Treasury, 383 F.3d 879, 887 (9th Cir. 2004) (emphasis in original) (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996)).

[9] Defendants contend that plaintiff's claim should be limited to the protected activity and adverse employment actions specifically identified at her deposition as the basis for her retaliation claim. Reply (Dkt. # 23) at 3. The Court disagrees. Plaintiff testified to facts that could support a retaliation claim based on her request for accommodation and her reassignment to light duty. The fact that plaintiff, a lay person, may not have understood the legal implications of her testimony does not preclude her attorney from making arguments in response to a motion for summary judgment that are otherwise supported by the record.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT           -15-

causation raised by the temporal proximity of the transfers to her protected activity.  A mere inconvenient alteration of location arising out of the employer's legitimate business needs is "an insufficient basis for actionable retaliation." Donahue v. Central Wash. Univ., 140 Wn. App. 17, 26 (2007).

Plaintiff has, however, established a *prima facie* case of retaliation related to her request for accommodation.  Boeing acknowledges that it imposed a work restriction on plaintiff because she requested a Tier 1 parking pass.  The causal link between the two events is undisputed.  By operation of Boeing's policies, the imposition of the work restriction forced plaintiff onto light duty.  Plaintiff's request for a parking accommodation was therefore at least a substantial factor in the decision to reassign plaintiff.

In order to determine whether the light duty assignment was "adverse" for purposes of a retaliation claim, the fact finder must evaluate the specific conditions surrounding the employee's transfer to determine whether the change in employment conditions was more than a mere inconvenience or alteration of job responsibilities. Tyner v. Dep't of Soc. and Health Servs., 137 Wn. App. 545, 564-65 (2007).  In order to further the purposes of the anti-retaliation statutes, an action will be considered "adverse" if it is "reasonably likely to deter employees from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).  The impact of the alteration "should be judged from the perspective of a reasonable person in the plaintiff's position." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 71 (2006).  In this case, a reasonable fact finder could conclude that the new assignments were adverse, both because they were less desirable and because plaintiff was suddenly at risk of termination unless she proved that she was able to perform the duties of her previous position. See also St. John v. Employment Dev. Dept., 642 F.2d 273, 274 (9th Cir. 1981) (affirming a district court decision that transferring an employee to a job with equal pay and status constituted a retaliatory act in violation of Title VII).  An employee in plaintiff's position would reasonably conclude that the assignment to light duty, with termination looming in 180 days,

was the "cost" of seeking an advantageous parking place.

Defendant does not offer a legitimate, non-retaliatory reason for imposing a work restriction on plaintiff after she asked for a Tier 1 parking pass. Because the inference of retaliation raised by plaintiff's *prima facie* showing remains, summary judgment on this aspect of plaintiff's retaliation claim is not appropriate.

## CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff has raised genuine issues of material fact regarding her claims of disability discrimination under the ADA and the WLAD. Her state and federal retaliation claims related to her light duty assignment also survive summary judgment. Plaintiff's WLAD age discrimination, race discrimination, hostile work environment, and other retaliation claims fail as a matter of law, however, and they, along with plaintiff's race and gender discrimination claims under Title VII, her age discrimination claim under the Age Discrimination in Employment Act of 1967, her race discrimination claim under 42 U.S.C. § 1981, and her common law claims of negligence, negligent infliction of emotional distress, negligent hiring, outrage, and assault and battery, are hereby DISMISSED.

Dated this 24th day of January, 2011.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge